UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CH CORKTOWN, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITIZENS BANK, N.A.,<br><br>Defendant. | Case No. 25-cv-13106<br><br>Honorable Robert J. White |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

## I. Introduction

Plaintiffs CH Corktown, LLC (Corktown) and Corner Tavern, LLC (Corner) sued Defendant Citizens Bank, N.A. (Citizens) to recover funds transferred wrongfully by Corner's accountant to his personal accounting firm. (ECF No. 14, PageID.288–90). At the time, Corktown maintained a business deposit account with Citizens. (*Id.* at PageID.292). Corner is a "sister company" to Corktown and used Corktown's business checking account at Citizens to pay its vendors. (*Id.* at PageID.289). Corner's accountant abused his access to the Citizens' account and siphoned more than $500,000 from Plaintiffs. (*Id.*). In the wake of this theft, Plaintiffs sued Citizens.

Plaintiffs specifically alleged that Citizens breached the parties' contractual terms and the implied duty of good faith and fair dealing by failing to detect and alert Plaintiffs to the unusual activity on Plaintiffs' account. (*Id.* at PageID.294). Plaintiffs also sued Citizens for negligence on a similar theory. (*Id.* at PageID.296). Presently before the Court is Citizens' motion to dismiss the amended complaint. (ECF No. 17). For the following reasons, the Court will grant the motion.

## II. Background

### A. *Factual History*

Corktown opened a business deposit account at Citizens on January 13, 2020. (ECF No. 14, PageID.289). As Corktown's "sister company", Corner used Corktown's Citizens account to pay its vendors. (*Id.*).

In May 2022, Corner hired Nicholas Barber as an accountant. (*Id.*). About six months later, Corner established a Melio Solutions, Inc. (Melio) account connected to Corktown's business checking account at Citizens. (*Id.* at PageID.290). Melio is a third-party platform through which companies can pay vendors by ACH bank transfer, card, or expedited payments. (*Id.*). Corner designated Barber as an authorized user on its Melio account. (*Id.*).

Between March and July 2025, Barber abused his Melio authorization and caused a number of unauthorized ACH payments to be made from Corktown's Citizens account to Cardinal Strategic Accounting, LLC (Cardinal). (*Id.* at

PageID.290, 292). Cardinal is an accounting firm owned by Barber. (*Id.* at PageID.290). The unauthorized ACH payments made during that time totaled more than $500,000. (*Id.* at PageID.290). Although Citizens stated that it had "systems in place to detect unusual patterns of activity which could indicate fraud on your accounts," (ECF No. 14-4, PageID.411), Citizens never alerted Plaintiffs of any unusual activity on Corktown's business account. (ECF No. 14, PageID.292). By the time Plaintiffs realized what had occurred, their account at Citizens was depleted. (*Id.*).

In July 2025, Plaintiffs alerted Citizens of more than 40 fraudulent transactions that had occurred on their account, most of which took place in June 2025. (*Id.* at PageID.293). Although Corktown filed numerous ACH Return Requests with Citizens to recover the lost funds, as of the time of the amended complaint, Citizens had returned less than one-third of the money stolen from Corktown's business checking account. (*Id.*).

**B. *Procedural History***

On October 2, 2025, Plaintiffs filed a complaint alleging that Citizens negligently allowed Barber to transfer $500,000 from Corktown's account through a series of more than 40 transactions without warning Plaintiffs. (ECF No. 1, PageID.5–6). Citizens subsequently moved to dismiss, arguing that Plaintiffs' claims are preempted by Article 4A of the UCC, precluded by the parties' contract, and barred

by the economic loss doctrine. (ECF No. 13, PageID.172–78). In response, Plaintiffs filed the operative amended complaint, asserting claims for breach of contract and the implied covenant of good faith and fair dealing, as well as negligence. (ECF No. 14, PageID.293–96). Citizens then filed a second motion to dismiss, which is now before the Court. (ECF No. 17).

## III. Legal Standard

A defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding the motion, courts must "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. Analysis

Citizens argues that Article 4A of the Uniform Commercial Code (UCC), codified in Mich. Comp. Laws § 440.4601, *et seq.*, provides the exclusive remedy for Plaintiffs' claims and therefore requires dismissal of the amended complaint in its entirety. (ECF No. 17, PageID.536). Citizens alternatively sought dismissal based on the parties' contract, the economic loss doctrine, and Michigan law's failure to recognize an independent cause of action for breach of the implied duty of good faith and fair dealing. (*Id.* at PageID.549-58).

### A. *Article 4A*

Citizens argues that Article 4A applies to the transfers at issue and therefore preempts Plaintiffs' common law claims. (*Id.* at PageID.546–47). Plaintiffs disagree. (ECF No. 18, PageID.568). According to Plaintiffs, the transfers were "debit" transfers rather than "credit" transfers, such that Article 4A does not apply. (*Id.*). Whether Article 4A applies therefore turns first on the nature of the transfers at issue.

"Electronic funds transfers are governed by Article 4A of the Uniform Commercial Code, codified in Michigan at M.C.L. 440.4601, *et seq.*" *Kirschner v. Wells Fargo Bank*, 2021 WL 5545957, at *2 (E.D. Mich. July 19, 2021). "'Funds transfer' means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order."

M.C.L. § 440.4604(a). "A funds transfer is completed by the acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." *Id.* A funds transfer is "commonly known as [a] wholesale wire transfer[]." *Owczarzak v. JP Morgan Chase Bank, N.A.*, 2024 WL 3827415, at *1 (E.D. Mich. July 15, 2024); M.C.L. § 440.4602 cmt.

Article 4A "displaces common-law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties, or liabilities inconsistent with Article 4A." *Kirschner*, 2021 WL 5545957 at *2 (quoting *Wright v. Citizen's Bank of E. Tenn.*, 640 F. App'x 401, 406-07 (6th Cir. 2016)). Comment 4 to M.C.L. § 440.4604 explains that the drafters intended Article 4A to cover credit transfers, in which "the instruction to pay is given by the person making payment," but not debit transfers, in which "the instruction to pay is given by the person receiving payment." M.C.L. § 440.4604 cmt. 4.

The Court finds that the transactions are credit transfers such that Article 4A applies. The instructions to pay were given by Barber, acting as Corner's authorized agent, rather than by Cardinal, the beneficiary. Plaintiffs relied heavily on *Experts, LLC v. JPMorgan Chase & Co.*, No. 13-cv-12550, 2013 WL 4487508 (E.D. Mich. Aug. 20, 2013) to show otherwise. But *Experts* involved a materially different payment arrangement. There, the plaintiff used an ACH account to initiate scheduled withdrawals from its customers' bank accounts, which were then

deposited into the plaintiff's account. *Id.* at *6. In other words, the recipient of the funds initiated the withdrawals from the payors' accounts.

Here, by contrast, Cardinal, the beneficiary, did not initiate a withdrawal from Corktown's account. Instead, Barber, being Corner's accountant and authorized agent, used Corner's Melio account to instruct Citizens to transfer funds from Corktown's account to Cardinal. (ECF No. 14, PageID.289-90). Thus, the instruction to pay came from Plaintiff Corner's authorized agent, not from the beneficiary. That Barber fraudulently initiated the transfers for his own benefit and without Plaintiffs' authorization does not transform the transactions into debit transfers. *See* M.C.L. § 440.4604 cmt. 4 ("[i]f the beneficiary of a funds transfer is the originator of the transfer, the transfer is governed by Article 4A if it is a credit transfer in form.").

Plaintiffs also cited several out-of-circuit cases in support of their position. None of these cases alter the Court's decision. In *Azure College, Inc. v. Bank of Am., N.A.*, 629 F. Supp. 3d 1200, 1205 (S.D. Fla. 2022), the beneficiary or its bank initiated the ACH debits against the plaintiff's account, and the plaintiff played no part in initiating the transactions. The transactions therefore qualified as debit transfers. *Id.* Here, by contrast, Cardinal did not initiate a transaction against Corktown's account. Likewise, in *Chantilly Auto Body, Inc. v. Truist Bank, N.A.*, 770 F. Supp. 3d 921, 924 (E.D. Va. 2025), the court distinguished its facts from those

where a credit transaction was found. The difference was that a credit transaction "was initiated *by the payor's bank directly* in response to an instruction ostensibly on behalf of the payor," whereas the transfer request in *Chantilly* "was submitted to a payee's bank." *Id.*

Because the fraudulent transfers were credit transfers, and because a bank's "duty to maintain and abide by commercially reasonable security procedures is set forth in Article 4A", the Court finds that Plaintiffs' claims seek to impose liability based on situations addressed by Article 4A. *Owczarzak*, 2024 WL 3827415, at *4 (citing *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 978 (W.D. Tenn. 2020); M.C.L. 440.4702(3). Therefore, Article 4A preempts Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence. *Kirschner*, 2021 WL 5545957 at *2. Because the Court concludes that Article 4A governs the transactions at issue and preempts Plaintiffs' common-law claims, it need not address Citizens' alternative arguments. Accordingly,

IT IS ORDERED that Citizens' motion to dismiss the amended complaint (ECF No. 17) is granted.

Dated: September 4, 2026

s/Robert J. White
Robert J. White
United States District Judge